EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff,

v.

COMMUNITY UNIT SCHOOL DISTRICT
NO. 9, MADISON COUNTY, ILLINOIS
and Board of Trustees of the Teachers
Retirement System of State of Illinois,
Defendants.

Civ. No. 84–3314.

United States District Court,
S.D. Illinois,
East St. Louis Division.

Aug. 22, 1986.

Barbara A. Seely and Donna L. Harper, E.E.O.C., St. Louis, Mo., for plaintiff.

Harold G. Baker, Jr., Belleville, Ill., Robert D. Francis, Dunham, Boman & Leskera, East St. Louis, Ill., Bd. of Trustees of TRS State of Ill., Louis W. Kosiba, Gen. Counsel, Teachers' Retirement System of State of Ill., Springfield, Ill., for defendants.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

Plaintiff, the Equal Employment Opportunity Commission, brought this action charging that the defendant Community Unit School District No. 9, Madison County, Illinois violated the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. (ADEA) when it reclassified or demoted Calvin Bartels and Fred Noeth from administrators to teachers. The plaintiff joined as defendant the Board of Trustees of the Teachers Retirement System of the State of Illinois in order to effectuate complete relief.

Specifically, the plaintiff states that due to financial problems, the defendant decided to close a number of schools at the end of the 1982–1983 school year. As a result of the school closings, it was necessary to reassign a number of administrators. The plaintiff alleges that the B.J. Davis, Superintendent of Schools, selected Calvin Bartels and Fred Noeth for reclassification to teaching positions because they had previously notified the School Board that they intended to retire at the end of the 1983–1984 school year. The plaintiff argues that this factor (notification of retirement) is so closely related to age that it amounts to age discrimination. The plaintiff further contends that the Court should find that this reclassification or demotion was paramount to a constructive discharge and that the Court should not offset the award to Bartels and Noeth by the amount they would have received had they taught the last year rather than take retirement at the end of the 1982–1983 school year.

The defendant maintains that the Bartels and Noeth's announced retirement was a factor, but not the determining factor in its decision to reclassify them. The defendant contends that their performance was the determining factor. In any event, the defendant argues that even if the Court finds that Bartels and Noeth's intention to retire after the 1983–1984 school year was the determining factor, the defendant's concern about continuity in the administrator positions was a reasonable factor other than age that mandated the defendant's decision. Finally, the defendant submits that if the Court finds a violation of the ADEA then any award should be offset by the fact that Bartels and Noeth did not mitigate their damages by taking the teaching positions for the 1983–1984 school year.

The Court, without a jury, heard the matter on July 31, 1986 and August 1, 1986. The following memorandum represents this Court findings of fact and conclusions of law as contemplated by Fed.R. Civ.P. 52(a).

Plaintiff, Equal Employment Opportunity Commission is an agency of the United States of America charged with the administration, interpretation, and enforcement of the ADEA and is expressly authorized to bring this action by Section 7(b) of the ADEA, 29 U.S.C. § 626(b). At all times relevant hereto, the defendant, Granite City, Illinois Community Unit School District No. 9, has continually been and is now

an instrumentality of a political subdivision, doing business in the State of Illinois and the City of Granite City, where it is engaged in the operation of public elementary and secondary schools and had continuously and does now employ more than twenty employees. At all times relevant hereto, the defendant has continuously been and is now an employer in an industry affecting commerce within the meaning of Sections 11(b), (g), and (h) of the ADEA, 29 U.S.C. § 630(b), (g), and (h). At all times relevant hereto, the Teachers Retirement System for the State of Illinois had administered the pension plan covering certified employees of the defendant and, accordingly has an interest in the outcome of this litigation and is properly joined as a party. This Court has jurisdiction in this case pursuant to Section 7(b) of the ADEA.

The ADEA prohibits discrimination in the workplace based on age. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985). To establish a violation of the ADEA, the plaintiff must prove an adverse employment decision was made because of his age. *Dorsch v. L.B. Foster Co.*, 782 F.2d 1421, 1424 (7th Cir.1986). To accomplish this, the plaintiff must prove not that age was the sole factor motivating the employer but that age was a "determining factor;" that the employment decision would not have been made "but for" his employer's motive to discriminate against him because of his age. *Id.* The plaintiff may prove his case with direct or circumstantial evidence. *Id.* When the plaintiff is forced to rely on indirect evidence, the Court must employ the analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) to evaluate the evidence. The shifting burdens of proof set forth in *McDonnell Douglas* are designed so that the " 'plaintiff has his day in court despite the unavailability of direct evidence.' " *Thurston*, 105 S.Ct. at 622 (citation omitted). However, when the plaintiff presents direct evidence, the *McDonnell Douglas* analysis is inapplicable. *Id.*

Here, the plaintiff argues that there is direct evidence of discrimination and that the *McDonnell Douglas* analysis is inapplicable. The plaintiff characterizes the evidence of defendant's reliance on Bartels and Noeth's notification as direct evidence of discrimination because such a factor is inexorably linked with age. Therefore, the Court will not employ the *McDonnell Douglas* framework.

Prior to a finding of specific facts and an application of them to the law, the Court feels it is appropriate to discuss what is and is not claimed by the plaintiff. There are two levels of the employment decision in question. The first level is the decision to close some of the defendant's schools. This decision was not based on age, nor does the plaintiff allege that it was based on age. It was a purely economic decision. Correspondingly, the decision to reassign the administrators at *these* schools was economic. Further, the fact that some of these administrators or some of the administrators from the remaining schools had to be reassigned to teaching positions was also an economic decision. There were simply more administrators than administrative positions. The second level of the decision involves the question: given the independent economic reason to reassign someone to a teaching position who should that someone be and on what basis shall he be chosen? See Larson, *Employment Discrimination*, § 100.21 (1986). The plaintiff contends that this decision was based on the fact that Bartels and Noeth intended to retire. The defendant submits that although this was a consideration, the determining factor was Bartels and Noeth's performance in relation to the other administrators.

After hearing the evidence, the Court finds that Bartels and Noeth's intention to retire after the 1983–1984 school year was the determining factor in the defendant's decision to reclassify them. B.J. Davis, Superintendent of Schools for the defendant district unequivocally stated in an affidavit he gave to an EEOC investigator in November of 1983 that the main reason Bartels and Noeth were reclassified was

because they both indicated that they would retire after the 1983–1984 school year. (Plaintiff's Exhibit 14). Although Terry Salem and Frank Kraus both testified that they made the initial recommendations to Mr. Davis, and that Bartels and Noeth's performance in relation to the other administrators was the determining factor, this testimony is inconsistent with Mr. Davis' affidavit and the fact that both Bartels and Noeth had excellent employment records. Salem and Kraus testified that Bartels and Noeth were adequate administrators, but that because some of the administrators had to be reclassified, a ranking of the administrators had to be done. Both Salem and Kraus indicated that Bartels and Noeth were placed on the lower end of their respective rankings. However, the Court finds that the defendant had to choose among a number of well qualified administrators, and in the case of Bartels and Noeth, the determining factor was not their performance in relation to the other administrators but rather the fact that they intended to retire in one year.

Based on this finding the Court must determine whether the defendant's decisional process with respect to Bartels and Noeth involved discrimination. Placed in the legal framework, the Court must determine if defendant's desire for continuity was a reasonable factor other than age.

The ADEA provides that it shall not be unlawful to take any otherwise prohibited actions "where the differentiation is based on factors other than age...." 29 U.S.C. § 623(f)(1). Theoretically, this defense can be defeated by showing that the factor is not reasonable *or* that the factor is so inexorably linked with age that cannot be viewed as a separate factor. The plaintiff has argued that notification of an intent to retire is so inexorably linked with age that it cannot be viewed as a separate factor.

The courts construing this defense have held that seniority is inexorably linked with age, and cannot be viewed as a separate factor; *E.E.O.C. v. City of Altoona, PA.*, 723 F.2d 4 (3d Cir.1983) *cert. denied,* 467 U.S. 1204, 104 S.Ct. 2386, 81 L.Ed.2d 344 (1984); that retirement status is not a factor other than age, *E.E.O.C. v. Borden's Inc.*, 724 F.2d 1390 (9th Cir.1984); and that, a need for a "younger image" was not a factor other than age, *Rose v. National Cash Register Corp.*, 703 F.2d 225 (6th Cir.). *cert. denied,* 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 317 (1983).

Likewise, the Court holds here that notification of an intent to retire is so inexorably linked with age that it cannot be viewed as a separate factor. Obviously, the older the individual gets, the more likely he is to retire. Therefore, the continuity argument could be made against any older employee. The Court cannot envision a common situation, other than retirement, where the employer would know that an employee intended to resign in the future and would use that fact in its employment decision. Additionally, such a factor has the effect of penalizing an employee for giving in advance to his employer the date he intends to retire. The undisputed evidence at trial indicated that employees such as Bartels and Noeth gave their notification of their intent to retire after a given school year so that the defendant could pay them their unused sick pay over the last few years of their employment and thereby increase their pension benefits which were based in part on their salary in these last few years. Bartels and Noeth gave their notification in advance to take advantage of this procedure, but were penalized for doing so. Finally, an employee could always revoke his decision to retire. The ADEA was designed in part to allow an employee maximum freedom of choice when deciding to retire. See S.Rep.No. 493, 95th Cong., 2d Sess. 3, *reprinted in* 1978 U.S.Code Cong. & Ad.News 504, 506.

Therefore, the Court finds that the defendant violated the ADEA when it reclassified Bartels and Noeth from administrators to teachers because they intended to retire a year later.

The Court also finds that this violation was not wilful. Section 7(b) of the ADEA, 29 U.S.C. § 626(b) provides that the plaintiff is entitled to double damages for a

wilful violation. A violation is "wilful" if the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA. See *Trans World Airline Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). To support its contention that the violation here was wilful, the plaintiff points to the fact that the defendant, at all relevant times, retained the services of an attorney for advisory purposes, but that the defendant did not consult this attorney prior to its decision regarding Bartels and Noeth even though Mr. Davis was aware of the ADEA. The Court disagrees. The defendant has convinced the Court that it was truly concerned with the fact that these individuals in question would be leaving after the next year. Notwithstanding this fact, the Court has made the determination that this amounts to age discrimination. Such an issue was one of first impression and one that the Court feels is very close. While it may have been more prudent for Mr. Davis to consult with the defendant's attorney prior to making the decision, the Court refuses to label such inaction as "reckless disregard." Therefore, the Court concludes that the defendant's violation was not wilful within the meaning of § 7(b), and that the plaintiff is not entitled to liquidated damages.

With respect to damages, the plaintiff asks this Court to find that the defendant's reclassification of Bartels and Noeth amounted to a constructive discharge and that damages should be calculated based on the fact that they both did not work the 1983–1984 school year. The defendant contends that Bartels and Noeth had a duty to mitigate their damages and that this duty required them to take the teaching positions for the 1983–1984 school year.

As an initial matter, the Court notes that the constructive discharge cases are distinguishable from the case at hand. Those cases do not deal with the situation where and adverse employment decision is made by the employer, but rather where the employee's working conditions become so intolerable that it forces him to quit his job. The intolerability is generally created by the type of discrimination alleged to have occurred. In other words, the sexual harassment or racial harassment becomes so intolerable that the employee resigns. See *Goss v. Exxon Office Systems Co.*, 747 F.2d 885 (3rd Cir.1984). Here, the alleged intolerability is caused by the embarassment and humiliation from being reclassified to teachers. There is no allegation that the humiliation was caused by age harassment. In fact, the Court can find no constructive discharge case involving age discrimination. Therefore, the Court believes that the legal framework involved in the constructive discharge cases does not apply here.

As a practical matter, however, the question in both a constructive discharge case and for mitigation purposes boils down to reasonableness. The standard the Court would adopt if this were a constructive discharge case is whether "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Goss*, 747 F.2d at 886. In the mitigation context, the plaintiff's failure to mitigate losses will reduce recovery if the defendant can show the employee refused reasonable employment opportunities. *Orzel v. City of Wauwatosa Fire Dep't*, 697 F.2d 743 (7th Cir.), *cert. denied*, 464 U.S. 992, 104 S.Ct. 484, 78 L.Ed.2d 680 (1983).

In this case, the question becomes whether it was reasonable for Bartels and Noeth to teach during the 1983–1984 school year. In support of its contention that it would have been unreasonable for Bartels and Noeth to teach, the plaintiff pointed to three concerns. First, both Bartels and Noeth felt that it would have been very difficult for them to resume teaching after so many years away from the classroom. Second, both Bartels and Noeth testified that they believed they would have lost their $5,000.00 paid death benefit. Finally, both indicated that it would have been very humiliating for them to return to the classroom, having served in an administrator position for so many years. They perceived that others in the school district and

the community would look down upon them and think they were demoted for bad performance.

█ The Court finds that it would not have been unreasonable for Bartels and Noeth to return to the classroom. Although teaching is by no means any easy profession, the Court is confident that Bartels and Noeth could have done an adequate job at it during the 1983–1984 school year. Davis testified that the defendant would have assigned them to a year and subject with which they would have been comfortable. With respect to the $5,000.00 paid death benefit, the testimony revealed everything but clarity as to what happened to this benefit when an administrator retired as a school teacher. The Court believes that Bartels and Noeth would have received the benefit had they retired as teachers. More importantly, however, neither Bartels nor Noeth made an inquiry into their entitlement to the benefit. Finally, the Court can sympathize with Bartels and Noeth's feelings of humiliation. Both were very proud of their accomplishments in the school district and their status in the community. However, teaching is an admirable profession. Further, the Court does not believe that Bartels and Noeth's perception was justified. The defendant district was facing hard economic decisions. These decisions resulted in the closing of Bartels and Noeth's schools. The logical inference the public would have drawn would have been that Bartels and Noeth were reclassified because their schools were closed. Finally, accepting the plaintiff's argument would be paramount to finding that in every demotion the employee does not have to mitigate his damages by taking the new job because it would be humiliating. Therefore, the Court concludes that Bartels and Noeth had a duty to mitigate their damages. They breached that duty by not taking the teaching positions for the 1983–1984 school year.

█ With this conclusion in mind, the Court turns to specific amount of damages. As a general rule, the goal of the ADEA is to restore the victim of discrimination to the economic position he would have occupied but for the employer's unlawful conduct. *Rodriguez v. Taylor,* 569 F.2d 1231, 1238 (3d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978). Accordingly, Mr. Bartels is entitled to damages in the amount of $6,643.95, which is the difference between what he would have earned as an administrator ($32,892.62), plus pension contributions by defendant ($2,860.21) for a total administrative salary of $35,752.83, less the amount he would have earned as a teacher ($26,843.76), plus pension contributions by defendant ($2,334.24) for a total teacher's salary of $29,178.00, which equals $6,574.83, plus $69.12, which is the difference between amounts of the life insurance premium payments defendant would have made for Mr. Bartels as an administrator ($126.72) and as a teacher ($57.60). Mr. Noeth is entitled to damages in the amount of $4,718.22, which is the difference between what he would have earned as an administrator ($31,124.48), plus pension contributions by defendant ($2,706.46) for a total administrative salary of $33,830.94, less the amount he would have earned as a teacher ($26,843.76), plus pension contributions by defendant ($2,334.24) for a total teacher's salary of $29,178.00, which equals $4,652.94, plus $65.28, which is the difference between the amount of life insurance premium payments defendant would have made for Mr. Noeth as an administrator ($122.88) and as a teacher ($57.60).

The Court's decision in this case was not an easy one. Mr. Bartels and Mr. Noeth were good administrators and both served their employer well for a number of years. Their job was important to them and they cherished the respect that the job and their performance at it achieved for them. In all likelihood, both approached retirement with the confidence that they had earned it by hard work and good performance. As stated earlier, both men were proud of their accomplishments and the fact that they were instrumental in shaping their community. Justifiably, the defendant's decision to reclassify Mr. Bartels and Mr. Noeth was viewed by them as a "slap in the face."

By the same token the defendant's decision was difficult. The practicalities of the situation mandated that some administrators had to be reclassified. The defendant based its decision on the fact that some of the administrators intended to retire in a year and on its desire to maintain some continuity in the face of economic turmoil. While the Court understands the defendant's concern, the ADEA prohibits age via the label of retirement date from being the determining factor. However, the law also requires these individuals to take reasonable steps to mitigate their damages. Teaching may have been a bit uncomfortable, but under the circumstances it was not unreasonable.

Accordingly, the Court DIRECTS the Clerk to enter judgment for the plaintiff and against the defendant. The Court further ORDERS the defendant to pay Mr. Bartels and Mr. Noeth the amounts in accordance with the above memorandum. The Court also ORDERS the defendant to make the additional contributions to the Teachers Retirement System for the State of Illinois. Finally, the Court ORDERS the defendant Board of Trustees of the Teachers Retirement System of Illinois to make the appropriate adjustments in light of this memorandum to Mr. Bartels and Mr. Noeth's pension benefits.

IT IS SO ORDERED.