RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0142P (6th Cir.)
File Name: 03a0142p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

KAREN STEPHENSON,
    *Plaintiff-Appellant,*

    *v.*        No. 01-1708

ALLSTATE INSURANCE
COMPANY,
    *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-73148—Patrick J. Duggan, District Judge.

Argued: December 4, 2002

Decided and Filed: March 27, 2003[*]

Before: KRUPANSKY, SILER, and COLE, Circuit
Judges.

---

[*] This decision was originally issued as an "unpublished decision"
filed on March 27, 2003. On May 5, 2003, the court designated the
opinion as one recommended for full-text publication.

1

---

---

## COUNSEL

**ARGUED:** David B. Landry, NEMIER, TOLARI,
LANDRY, MAZZEO & JOHNSON, Farmington Hills,
Michigan, for Appellant. Roger T. Brice, SONNENSCHEIN
NATH & ROSENTHAL, Chicago, Illinois, for Appellee.
**ON BRIEF:** David B. Landry, NEMIER, TOLARI,
LANDRY, MAZZEO & JOHNSON, Farmington Hills,
Michigan, for Appellant. Roger T. Brice, Thomas E. Deer,
SONNENSCHEIN NATH & ROSENTHAL, Chicago,
Illinois, for Appellee.

KRUPANSKY, J., delivered the opinion of the court, in
which SILER, J., joined. COLE, J. (p. 13), delivered a
separate opinion concurring in the result.

---

## OPINION

---

KRUPANSKY, Circuit Judge. In this appeal, the plaintiff-
appellant, Karen Stephenson ("Stephenson") challenged the
district court's award of summary judgment to defendant-
appellee, Allstate Insurance Company ("Allstate"), alleging
that Allstate breached its duty of good faith and fair dealing
when it denied her request to purchase another agent's "book
of business."[1] As Allstate retained the exclusive and final
approval of all agent purchases under the Allstate R3001
Exclusive Agency Agreement, ("R3001 Agreement'),
appellant's contention has failed to join a genuine issue of
material fact and, for the reasons discussed below, this court
affirms the summary judgment granted by the district court.

---

[1] Before the district court, Stephenson also averred that Allstate's act
of improperly denying her request constituted tortious interference with
a business relationship or expectancy. As appellant has not appealed this
issue, consideration of this claim is barred.

Stephenson had operated as an "exclusive agent" through contract with Allstate under the R3001 Agreement she executed on June 10, 1996. Appellant's agency was located in Livonia, Ohio in zip code 48152. During September of 1998, Stephenson began negotiations with Alex Yvannou, another R3001 Agent, to purchase his Allstate accounts. Yvannou's agency was located in Canton, Ohio in zip code 48187. The offices were approximately eight miles apart. Upon reaching a purchase agreement, Stephenson and Yvannou notified their immediate agency manager and Allstate's Human Resources department of the proposed sale. Appellant was told that she should prepare a business plan while Human Resources finalized the paperwork for the deal. When Stephenson contacted Allstate to inquire where to send her business plan, she was informed that Allstate had denied the purchase because of the "zip code rule."[2] Yvannou subsequently sold his book of business to another agent within the same, Canton, zip code.

The "zip code rule" is set forth in Allstate's Agency Relocation Guidelines, under which all agency initiated agent relocations were limited to the agent's "current zip code or immediately contiguous zip code." Nothing in the R3001 Agreement, the Supplemental Agreement, or the Independent Contractor Manuals ("Manuals") references a "zip code rule" however, each of these binding contract documents discusses the restrictions placed upon the appellant when seeking to purchase another agent's book of business.

First, section XV of the R3001 Agreement, entitled "Transfer of Interest in Agreement," addressed the restrictions upon appellant's proposed purchase of another agent's book of business, stating:

---

[2] In its original answer, Allstate responded that it denied the purchase due to the "zip code rule," while in its Brief supporting its motion for summary judgment Allstate averred that the sale was not denied because of the "zip code rule." However, for purposes of summary judgment, only, Allstate and the district court assumed that the purchase was denied in response to the company's "zip code rule."

This Agreement is personal to you....Accordingly, you may not execute a transfer of your interest in this Agreement without prior written approval of the Company. A transfer of interest is described in the Supplement and includes, but is not limited to, any sale, merger, or assignment, in whole or in part, directly, indirectly, or contingently, of this Agreement or any rights or obligations under it. You have the obligation to notify the Company of a proposed transfer and to request approval. *The Company retains the right in its exclusive judgment to approve or disapprove such a transfer.*

R3001 Agreement §XV.A (emphasis added). The R3001 Agreement also contained an integration clause that stated: "This Agreement is the sole and entire agency agreement between the Company and you." *Id.* at §I.C. With regard to modifications, the R3001 Agreement provided that the contract between Stephenson and Allstate "may not be modified except by a written agreement between the Company and you which expressly states that it modifies this Agreement. No other written statements, representations, or agreements...will be effective to modify this Agreement." *Id.* at §XX.A.

Second, the Manuals, which were expressly incorporated into the R3001 Agreement, stated that an R3001 agent may transfer her economic interest in the business by "[s]elling the economic interest to an approved buyer." The Manuals also noted that R3001 Agents may sell their "book of business at any time provided the buyer is approved by the Company." In a section specifically addressing "Agency Sales Between Existing R3001 Agents," the Manuals stated:

An office partner (R3001 only) may be approved as a buyer of your interest in your book of business. The buying agent must have acceptable results in his current agency. The buying agent must also submit an acceptable updated Business Plan which includes a provision for providing a proper level of service for the total book of business after the sale (e.g. adding one or

more Sales Producers, maintaining PSA status, etc.). Further, the buying agent must have a satisfactory business relationship with Allstate. This includes acting professionally with all representatives of the Company and demonstrating a willingness to work with Company management to achieve desired business results. *Please note that the buyer is always subject to final Company approval.*

Approval *may* also be given if your location is in *close proximity* to the buying R3001 Agent's location. The business must be merged into one book in one of the locations. Satellite offices are not permitted. *Again, the buying agent must meet all the requirements noted above.*

(emphasis added).

Of additional relevance in the case *sub judice*, the appellee published a news-weekly entitled "Blueprints," to disseminate company information, including company standards, policies and procedures. In the April 23, 1998 publication of "Blueprints" the following passage was included under the section "Human Resources,"

*Here are a few questions regarding with [sic] the NOA changes*:

Q: Has the contiguous zip code requirements [sic] changed for agents moving from one location to another?

A. No, when an agent makes a request to *move* his/her office location the requirement of having a contiguous zip code is still in effect.

Q. Has anything changed regarding the location requirement of the sellers book of business and the buyers book of business, when approving a request for purchasing a book?

A. No, the same requirements are still in effect. When purchasing a book of business, the contiguous zip code rule is not a requirement, but the books of business must be within reasonable proximity to one another. This requirement provides for the buying agent to consolidate the two books and still provide the required customer service.

(emphasis in original).

Appellant filed the instant action against Allstate averring breach of contract and tortious interference with Appellant's business relationship or expectancy. On January 16, 2001, Allstate filed a motion for summary judgment asserting that appellant's claims failed as a matter of law because appellee retained the unqualified right to deny the sale based upon its "exclusive judgment."

In a well-reasoned opinion, the district court agreed with Allstate's contentions. The court concluded that §XV.A of the R3001 Agreement reserved to Allstate the unlimited right to make decisions with respect to the transfer sought by Stephenson. Additionally, as the parties had explicitly expressed their respective rights, the contract did not contain an implied covenant of good faith and fair dealing, and the district court found that Stephenson's claim failed as a matter of law. Finally, given Allstate's exclusive right to deny appellant's transfer of another agent's books of business, the court determined that the appellee did not tortiously interfere with Stephenson's business relationship or expectancy.

The instant appeal arose out of Stephenson's timely challenge of the district court's determination regarding only the breach of contract claim. The appellant did not contest the district court's conclusions on her claim of tortious interference.

This court has proper jurisdiction under 28 U.S.C. § 1291, which generally grants appellate jurisdiction to the courts of appeals of all final decisions of the district courts of the United States.

This court reviews a summary judgment order under a *de novo* standard. *Pinney Dock & Transp. v. Penn. Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.), *cert. denied*, 488 U.S. 880 (1988). Summary judgment is proper only if there is no genuine issue as to any material fact, thereby entitling the moving party to judgment as a matter of law. *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 709 (6th Cir. 2000). There is no genuine issue of material fact for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could "return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). On a motion for summary judgment, the moving party bears the initial responsibility of identifying sections of the record that reflect the absence of a material issue of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).

Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to prove that there is a genuine issue for trial. *Id.* at 322-324. The nonmoving party must do more than demonstrate that there is some metaphysical doubt as to the material facts. *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994). The nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Co., Inc.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

Appellant has argued that the R3001 Agreement included an implied covenant of good faith and fair dealing which Allstate breached when it refused to approve Stephenson's purchase of Yvannou's book of business based upon the "zip code rule." Stephenson has specifically asserted that the Manuals set forth particular requirements for obtaining agency approval which modified Allstate's "exclusive judgment" and which did not include the "zip code rule," but instead, stated that sale approval could be given if the agents involved were in "close proximity." Stephenson has also averred that Allstate's weekly news circular, "Blueprints," expressly stated that the "zip code rule" would not be used in evaluating a proposed purchase of another agent's existing

business which was in "close proximity" to the purchaser's location. Neither of Stephenson's claims have merit.

An implied covenant of good faith and fair dealing in the performance of contracts is recognized by Michigan law only where one party to the contract makes its performance a matter of its own discretion. *See Hubbard Chevrolet Co. v. General Motors Corp.*, 873 F.2d 873, 876 (5th Cir. 1989) (applying Michigan law); *James v. Whirlpool Corp.*, 806 F.Supp. 835 (E.D. Mo. 1992) (applying Michigan law). In recognizing an implied covenant courts have sought to protect the reasonable expectations of the contracting parties. Discretion arises when the parties have agreed to defer decision on a particular term of the contract. As the court discussed in *Hubbard*,

> Discretion also may arise...from a lack of clarity or from an omission in the express contract. In either case, the dependent party must rely on the good faith of the party in control. *Only in such cases* do the courts raise explicitly the implied covenant of good faith and fair dealing, or interpret a contract in light of good faith performance.

*Hubbard*, 873 F.2d at 877, n.2 (emphasis added).

Additionally, this circuit has declined to ascribe a covenant of good faith and fair dealing in the interpretation of a contract " to override express contract terms." *Cook v. Little Caesar Enter., Inc.*, 210 F.3d 653, 657 (6th Cir. 2000) *(citing General Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1041 (6th Cir. 1990)). Consequently, when the parties have "unmistakably expressed their respective rights," as in the case *sub judice*, the covenant does not adhere. *Hubbard*, 873 F.2d at 877. *See also Clark Bros. Sales Co. v. Dana Corp.*, 77 F.Supp. 2d 837, 852 (E.D. Mich 1999) (the implied covenant does not supersede the express terms of the parties contract and cannot form the basis for a claim independent of that contract).

As the district court properly recognized, §XV.A of the R3001 Agreement governed the transfer of interest involved in the instant dispute. The plain language of the R3001 Agreement, that "the company retains the right in its exclusive judgment to approve or disapprove such a transfer," defines the reasonable expectations of the parties regarding the issue. Because any decision concerning the transfer of accounts between agents rested *exclusively* with Allstate, the contract presumed no discretion and, thereby, removed any basis upon which to imply a covenant of good faith and fair dealing. *Cook*, 210 F.3d at 657; *Hubbard*, 873 F.2d at 877 (clause in contract that precluded relocation absent General Motors' approval prohibited the application of the covenant of good faith and fair dealing); *Lytle v. Malady*, 579 N.W. 2d 906, 911-13 (Mich. 1998) (specific reservation of the right to terminate employees placed in handbook given to all new hires extinguished any implied "proper cause" standard for termination); *Burkhardt v. City Nat'l Bank of Detroit*, 226 N.W.2d 678, 680 (Mich.Ct.App. 1975) ("Where a party to a contract makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith").

Appellant has also contended that the incorporation of the Manuals into the R3001 Agreement created an ambiguity with respect to the terms of the contract.[3] Stephenson has maintained that the Manuals imposed criteria that Allstate had to take into consideration when deciding a question of transfer of interest. As such, Allstate had a duty to apply the criteria in good faith. Moreover, Stephenson has averred that the only relevant provision in the Manuals with respect to "geography"

---

[3] Stephenson has relied upon *Guilmet v. Campbell*, 188 N.W. 2d 601 (Mich. 1971); *Turner Associates v. Small Parts, Inc.*, 59 F.Supp. 2d 674 (E.D. Mich. 1999); and *Butterfield v. Metal Flow*, 462 N.W. 2d 815 (Mich. Ct. App.1990) for her contention that contested terms of a contract are to be decided by a jury. Appellant has misread the import of these cases, which stand for the proposition that the interpretation of an *ambiguous* contract is for the jury.

mentions that agent locations need only be in "close proximity."

Appellant's assertions, however, do not survive scrutiny. First, the criteria relied upon by Stephenson to assert ambiguity in the contract appeared in the Manuals and does not modify §XV.A of the R3001 Agreement. Indeed, under the controlling precedent of this circuit, the integration clause in §I.C of the R3001 Agreement indicated the parties' intentions to consider the R3001 Agreement as the full and final expression of their contract. *ADR North America, LLC v. Agway, Inc.*, 303 F.3d 653, 658 (6th Cir. 2002) (applying Michigan law) ("A written integration clause is conclusive evidence that the parties intended the document to be the final and complete expression of their agreement"). Moreover, Appellant has relied upon an unpublished New Hampshire district court decision applying Michigan law, *Ford Motor Co. v. Meredith Motor Co., Inc.*, No. 99-456-B, 2000 WL 1513702 (D.N.H. Aug. 24, 2000), to demonstrate that a contract's express language could create an implied covenant. Appellant's reliance is misguided, as *Meredith* simply provides no legally controlling precedent for this court.

Second, the prefacing language of the Manuals explicitly stated that when a conflict arose between the R3001 Agreement and the Manuals, the Agreement governed.[4] Thus, to the extent that the language in the Manuals, relied upon by Stephenson, attempted to modify the "exclusive judgment" language of §XV.A of the R3001 Agreement, the two documents were inconsistent. Under any such conflict the R3001 Agreement prevailed. Appellant's contention that

---

[4] The Manuals' preface states, in relevant part:
The exclusive Agent Independent Contractor Manuals (Manuals) are intended to explain and expand upon the provisions of the Allstate R3001 Exclusive Agency Agreements (R3001 Agreement). The Manuals are intended to be consistent with the express terms and conditions of the R3001 Agreement. To the extent that there is any conflict between any of the provisions of the Manuals and the express written terms of the R3001 Agreement, the R3001 Agreement shall govern.

such a reading rendered the criteria superfluous is without merit. The Manuals set out certain criteria that the Company *could* consider, but was not required to contemplate. Thus, appellant's contention that her claim should survive summary judgment because a reasonable jury could believe that Stephenson's agency was in "close proximity" to Yvannou's, mistakenly assumed that Allstate must take proximity into account. The permissive language of the Manuals merely stated, "[a]pproval *may* also be given if your location is in close proximity to the buying R3001 Agents location." (emphasis added). Finally, the Manuals repeatedly stated that the buyer's purchase of another agent's "book of business" was always subject to final approval by Allstate.

As an alternative argument, Stephenson has contended that the "Blueprints" publication should have been considered part of the R3001 Agreement or the Manuals, that is incorporated by reference. Stephenson's position rests on neither legal nor factual foundation.

First, nothing in the "Blueprints" circular expressly modified the R3001 Agreement between appellant and Allstate. The R3001 Agreement specifically provided that it "may not be modified except by a written agreement between the Company and you which expressly states that it modifies this Agreement. *No other written statements, representations, or agreements and no oral statements, representations, or agreements will be effective to modify this Agreement.*" R3001 Agreement, §XX.A (emphasis added). Moreover, the controlling precedent in this circuit bars the use of evidence *aliunde* to invalidate the terms of a written contract intended, as in the instant case, to be the full and final expression of the parties agreement. *See Wonderland Shopping Center Venture Ltd. Partnership v. CDC Mortg.*, 274 F.3d 1085, 1095 (6th Cir. 2001) (applying Michigan law) (Michigan's parole evidence rule bars the use of extrinsic evidence to contradict the terms of a written contract intended to be the final and complete expression of the parties agreement.); *see also Lytle*, 579 N.W. 2d at 912 (express disclaimer in the front of

employee handbook was sufficiently clear to nullify a contradictory provision later in the same handbook).

Second, Stephenson has failed to prove she proffered any "consideration" to support the presumption that "Blueprints" modified either the R3001 Agreement or the Manuals. Moreover, Stephenson's only claimed "reliance" that would have prohibited Allstate from using the "zip code rule," was the contract she entered into with Yvannou under the mistaken belief that information in "Blueprints" modified Allstate's "exclusive right" of judgment to approve business transfers. While Stephenson has averred on appeal, for the first time, that her continued employment supplied the heretofore-lacking consideration, this position was merely a *post hoc* attempt to supply the missing consideration. This contention fails as well. Appellant was an Allstate agent before the issuance of the "Blueprints" passage, and she remained one at the time of this appeal. As such, her action to remain an agent was inconsistent with any claimed reliance.

For the foregoing reasons, we affirm the order of the district court.

---

**CONCURRENCE**

---

R. GUY COLE, JR., Circuit Judge, concurring. I concur in the result reached by the majority. I write separately to note my disagreement with the majority to the extent that the majority opinion implies that the content of the Manual cannot create ambiguity in the contract due to the integration clause. The R3001 Agreement at issue in this case, in my view, does not exclude the Manual from consideration through the integration clause in §I.C of the Agreement. The R3001 Agreement expressly incorporates the Manual in its entirety. The Manual is therefore a part of the agreement integrated by §I.C. Thus, properly read, the integration clause functions to include, rather than exclude, the content of the Manual.

Because I do not view this issue to be critical to the disposition of the case, I concur.