**A. LOPRESTI & SONS, INC.,**
**Plaintiff–Appellant,**

v.

**GENERAL CAR & TRUCK LEASING SYSTEM, INC., Defendant–Appellee,**

**Cummins, Inc., Defendant–Appellee.**

No. 02–3319.

United States Court of Appeals, Sixth Circuit.

Oct. 27, 2003.

Jeffrey M. Embleton, Mansour, Gavin, Gerlack & Manos, Cleveland, OH, for Plaintiff–Appellant.

John D. Parker, Bridget M. Brennan, Baker & Hostetler, James L. McCrystal, Jr., Robert E. Cahill, Brzytwa, Quick &

McCrystal, John Q. Lewis, Jones Day, Cleveland, OH, for Defendant–Appellee.

Before SUHRHEINRICH, COLE, and ROGERS, Circuit Judges.

## OPINION

COLE, Circuit Judge.

In this diversity action for breach of contract, Plaintiff–Appellant A. LoPresti & Sons ("ALPS") appeals the summary judgment granted in favor of Defendants–Appellees General Car & Truck ("General") and Cummins Engine Co., Inc. ("Cummins"). ALPS and General entered into an Automotive Lease and Service Agreement (the "Agreement") that required General to supply ALPS with a fleet of trucks to be used for the delivery of refrigerated, perishable products. ALPS alleges that the trucks provided by General, and designed and manufactured by Cummins, were defective. The district court granted summary judgment to Defendants on Plaintiffs' claims, and also granted summary judgment to General as to its counterclaim against ALPS.

For the reasons that follow, we AFFIRM the judgment of the district court.

## I.

General is a leasing company that is in the business of purchasing vehicles, such as the trucks provided to ALPS, and leasing them to customers. ALPS is a food distributor of perishable goods. In 1997, ALPS decided to replace its aging fleet of trucks, and invited bids from several leasing companies. ALPS required that the new trucks possess a storage area with a "split configuration" to allow ALPS to transport frozen foods at a different temperatures. The Agreement, a seven-year lease, provided that ALPS would lease from General seventeen 1999 Freightliner Model FL–70 trucks, two 1999 Freightliner Model FL–80 tractors, and two 1999 Kidron trailers. General agreed to perform maintenance and repairs to keep the trucks in good operating condition. In the event of a mechanical breakdown, General was obligated to furnish, if available, a substitute vehicle, of similar carrying capacity and design, at no extra charge. General's only liability for failure to supply a substitute vehicle was abatement of the fixed rental charge.

The Agreement also contained the following disclaimer:

GENERAL MAKES NO WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WHETHER AS TO THE MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF ANY VEHICLE OR OTHER WISE. GENERAL IS NOT LIABLE UNDER ANY CIRCUMSTANCES FOR LOSS OF CUSTOMER'S PROFITS, DRIVERS' TIME, BUSINESS OR OTHER CONSEQUENTIAL OR INCIDENTAL DAMAGES CAUSED BY OR RESULTING FROM THE INTERRUPTION OR CESSATION FOR ANY REASON OF ANY LEASE OR SERVICE PROVIDED FOR IN THIS AGREEMENT.

Additionally, the Agreement states that if ALPS terminates a vehicle lease, General may, at its option, require ALPS to purchase the terminated vehicle at its fair market value on the termination date, provided that General notifies ALPS that it is exercising this option within thirty days of the date of the notice of termination.

Shortly after the trucks were delivered in October 1998, problems became apparent, the most serious of which were engine malfunctions, breakdowns in the refrigeration units, and problems with the anti-lock braking system. ALPS contends that, in some cases, General failed to provide a similar substitute truck, requiring ALPS to find another rental to replace the inoperable General truck. General claims that

it failed to provide a substitute truck on only one occasion.

Having become increasingly frustrated with the trucks, on July 5, 2000, ALPS notified General of its intention to terminate the Agreement if the trucks were not replaced. On August 14, 2000, ALPS sent General a written Notice of Termination. General confirmed acceptance of the termination, and advised ALPS that it was exercising its right to require ALPS to purchase the trucks. On September 12, 2000, ALPS requested an extension of the Agreement. ALPS and General did not reach agreement on an extension.

ALPS's brought suit alleging, among other things, that General had breached the Agreement. On February 25, 2002, the district court granted the motions for summary judgment made by General, Cummins, and Freightliner on all claims.[1] The district court also entered judgment for General on its counterclaim against ALPS for breach of contract, based on the failure of ALPS to purchase the vehicles after it had terminated the Agreement. General then filed a motion for a quantification of judgment. The district court granted this motion, and entered judgment for General in the amount of $1,182,263.69.

## II.

### A. Summary Judgment in Favor of General on ALPS's Contract Claims

ALPS contends that summary judgment in favor of General was inappropriate because genuine issues of material fact existed as to whether General breached express and implied warranties in the Agreement. ALPS asserts that General breached an express warranty that it would maintain and repair the trucks to keep them in good operating condition, and that it would furnish an appropriate substitute truck for any truck that was inoperable due to a mechanical failure. In addition, ALPS argues that General breached implied warranties of merchantability and fitness for a particular purpose. Finally, ALPS contends that General did not disclaim its warranties because the disclaimer included in the Agreement was invalid and because the district court was required to conduct an evidentiary hearing on the question of whether the disclaimer of warranties was unconscionable.

This Court reviews de novo a district court's grant of summary judgment. *See Stephenson v. Allstate Ins. Co.*, 328 F.3d 822 (6th Cir.2003). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

■ ALPS points to no set of facts to demonstrate that General breached the Agreement by failing to provide the necessary maintenance and repairs to keep the trucks in good operating condition. It is clear that many of the trucks leased by General to ALPS were frequently inoperable. However, ALPS has presented no evidence that the breakdown of any truck was caused by General's failure to properly repair or maintain the vehicle. Indeed, Leonard Fife, ALPS's Maintenance Director, testified that General performed the repairs it was required to perform, that General performed required preventive maintenance, and that he was unaware of any failure to perform on the part of General that caused a truck failure. Additionally, the evidence demonstrated that the Cummins engines were presenting similar issues in a number of trucks owned by General's competitors. ALPS required

---

1. Freightliner has been dismissed as a party     to this appeal.

that General provide trucks that included Cummins engines. Absent an express warranty, ALPS cannot hold General liable for the mechanical failures of engines that ALPS itself specified.

The evidence therefore demonstrates that the operational issues with the fleet of trucks were caused by mechanical defects, rather than by a failure to maintain or repair the vehicles. As General properly notes, the Agreement contains no express warranty that the trucks delivered would be free from mechanical defects. General notes that such a warranty is commonly included in vehicle lease contracts, but was not negotiated in the Agreement. In situations of mechanical failure, the contract provided that General's sole obligation was to provide a substitute vehicle of similar carrying capacity and design provided that a vehicle of that type was available in General's local fleet. General's liability for any failure to supply a substitute was limited to abatement of the fixed rental charge. "There can be no implied covenants in a contract in relation to any matter specifically covered by the written terms of the contract itself." *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 714 N.E.2d 898, 901 (Ohio 1999). Because the Agreement contemplates such mechanical failures, ALPS's remedy is limited to the abatement of its lease payments. ALPS does not, however, contend that General failed to abate lease payments when a substitute truck was not available.

■ It is true that Ohio law provides an implied warranty of merchantability in every lease, and for an implied warranty of fitness for a particular purpose when the lessor has reason to know of a particular purpose for which the goods are required and the lessee is relying on the lessor's skill or judgment in the selection of the goods, OHIO REV.CODE § 1310.20. However, the Agreement disclaimed these implied warranties in the manner provided by Ohio law.

Under Ohio law, in order to exclude or modify an otherwise implied warranty of merchantability, a contract must mention "merchantability" in conspicuous writing. OHIO REV.CODE § 1310.21. Similarly, to exclude or modify any implied warranty of fitness for a particular purpose, the exclusion shall be in writing and be conspicuous. *Id.* The Agreement contains, in capital letters that clearly set it apart from the remainder of the contract, a disclaimer explicitly excluding General from any express or implied warranties of merchantability or fitness for a particular purpose. Because the implied warranties of merchantability and fitness for a particular use have been disclaimed by General, they cannot form the basis for any liability of General to ALPS.

■ Finally, ALPS argues that the district court erred in ruling that General's disclaimer was not unconscionable without conducting an evidentiary hearing. Ohio law, however, only requires such a hearing upon a finding of unconscionability, not upon a finding of no unconscionability. Ohio law provides only that:

> Before making a finding of unconscionability ... a court, on its own motion or that of a party, shall afford the parties a reasonable opportunity to present evidence as to the setting, purpose and affect of the lease contract, a clause of the lease contract, or the conduct of the parties.

OHIO REV.CODE § 1310.06(C). Thus, Ohio law clearly does not require an evidentiary hearing prior to a finding that a disclaimer is *not* unconscionable. Accordingly, the district court's decision to grant summary judgment in favor of General was proper.

## B. Summary Judgment in Favor of General on General's Counterclaim

■ The district court granted summary judgment in favor of General on its counterclaim, holding that ALPS was required to purchase the trucks pursuant to the terms of the Agreement, which granted General the right to require ALPS to purchase the vehicles if ALPS elected to terminate the lease. ALPS argues that questions of fact exist regarding whether it intended to terminate the Agreement, whether ALPS in fact terminated the Agreement, and whether the parties, by their conduct, agreed to extend the terms of the contract.

Paragraph 12 of the Agreement unambiguously states that if ALPS terminates a vehicle's lease, General has the option of requiring that ALPS purchase the terminated vehicle at its fair market value. By sending the August 14 letter, it is clear that ALPS intended to terminate the Agreement. Because of the terms of the contract, which did not require General's assent, the August 14 letter sufficiently demonstrates that ALPS both intended to terminate the Agreement, and, in fact, did so.

■ Nor can ALPS argue that General waived it rights pursuant to the termination. Paragraph 19(d) of the Agreement, which provides that, "A party's failure to insist upon the performance ... will not be construed as a waiver of any breach of such provision ..." However, non-waiver clauses notwithstanding, parties that have acted in contradiction of their contractual rights have been held to have waived them. *See* 13 Richard A. Lord, WILLISTON ON CONTRACTS § 36 (4th ed. 1990) ("The general view is that a party to a written contract can waive a provision of that contract by conduct expressly or surrounding performance, despite the existence of a so-called anti waiver or 'failure to enforce' clause in the contract."). Nevertheless, courts finding such "non-waiver" provisions to have been waived, rely, in part, on a conclusion that a party has reasonably relied on the other party's conduct.

Here, ALPS had no reasonable basis to believe that General had waived its rights pursuant to Paragraph 19(d) of the Agreement. In its letter responding to ALPS's termination of the Agreement, General explicitly stated that it sought to pursue its contractual remedy against ALPS's having terminated the Agreement. Further, General sought a declaratory judgment that the Agreement was terminated and that ALPS was obligated to purchase the fleet of trucks. Not having reasonably relied on General's actions subsequent to its termination of the Agreement, ALPS cannot now claim that General's continued acceptance of its lease payments effectuated a waiver of its rights.

## C. General's Motion to Quantify the Judgment

■ On March 8, 2002, after the district court granted summary judgment in favor of General, General filed a motion for quantification of judgment. The district court granted this motion on April 26, 2002, and ordered that ALPS pay General $1,182,263.69 on General's counterclaim. ALPS claims that the district court granted this motion in error for four reasons.

First, ALPS states that the issue was not before the district court until after it issued a dispositive ruling, and that the district court therefore lacked jurisdiction to hear the motion. However, in its motion for summary judgment on its counterclaim, General stated that the court should require that ALPS purchase the vehicles from General "at a price calculated according to paragraph 12 of the Agreement computed from the date of the Court's judgment." As General notes, it would

have been impossible for General to request a specific amount as quantification when it did not know the date on which the district court's judgment would issue. Second, ALPS argues that General never sought such a ruling in its original motion for summary judgment and did not request such relief in its counterclaim. This argument suffers from the same defect as the one above: General did in fact include such a request, to the extent possible, in its motion for summary judgment and on its counterclaim. Third, ALPS asserts that the evidence the district court used to calculate the fair market value of the vehicles was inadmissible. All of the information necessary to calculate the amount of damages was available from "Schedule A," which was an addendum to the Agreement, and therefore already properly before the district court. Finally, ALPS contends that the district court "exceeded its authority when it granted General's motion more than a month after ALPS filed its notice of appeal." However, the quantification of the summary judgment granted in favor of General is not a "further determinative ruling" encompassed by this appeal. It is merely, as it is titled, a quantification of a judgment already entered. Accordingly, the district court properly granted quantification of the summary judgment.

D. The Cummins Express Warranty

■ Although Cummins, the manufacturer of the engines, provided a warranty covering any failures of the engines that result from defects in material or workmanship, the district court correctly concluded that ALPS had no contractual relationship with Cummins, and that there was no evidence that General provided or transferred to ALPS any express warranty it received from Cummins. The Cummins warranty explicitly states that the warranty is made to the owners of the engines. ALPS, as a lessee, was not an owner.

III.

For the foregoing reasons, we AFFIRM the judgment of the district court.