**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0426n.06

Case No. 16-2375

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 20, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| FCA US LLC, f/k/a CHRYSLER GROUP, LLC, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| EAGLE AUTO-MALL CORP., | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

**O P I N I O N**

BEFORE: SILER, McKEAGUE, and WHITE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Eagle Auto-Mall wants to sell new Jeeps and Chryslers in Riverhead, New York and FCA wants its vehicles sold in that market. But FCA declines to enter into a dealer arrangement with potential partners unless they meet FCA's expectations for sales and service facilities. Accordingly, FCA and Eagle signed a Letter of Intent (LOI) to enter into a Chrysler and Jeep sales and service agreement conditioned on Eagle's ability to meet those expectations.

In essence, the LOI outlined procedures and timelines for Eagle to propose and FCA to approve a new or renovated sales and service facility. But things fell apart during the term of the LOI, and the parties bring us this case on a complicated procedural posture—each claiming the other breached the LOI. The district court held that (1) FCA did not waive or modify any terms

in the LOI, (2) Eagle breached the LOI, and (3) FCA did not breach. It granted FCA summary judgment and dismissed the case. We affirm, for the following reasons.

## I

Eagle owns auto dealerships in Riverhead, New York. For years, it sold Chrysler and Jeep vehicles out of a facility that also housed its Mazda-Kia-Volvo dealership. That changed in 2009 when Chrysler (now FCA) filed for bankruptcy and, following reorganization, rejected its dealer agreement with Eagle and 788 other dealerships.

In response, Congress passed "Section 747," establishing an arbitration process that allowed for canceled dealerships, such as Eagle's, to be reinstated. *See* Consolidated Appropriations Act of 2010, § 747. Pub L. No. 111-117, 123 Stat. 3034, 3219-21. Under the provision, if a dealer prevailed at arbitration, the manufacturer was to provide it with a "customary and usual" LOI to enter into a franchise agreement. *See id.*

Eagle availed itself of Section 747 and won at arbitration, so FCA sent Eagle a LOI to enter into a franchise agreement. At first, Eagle attempted to negotiate terms of the LOI but then sued when negotiations failed. In resolving that dispute, the Eastern District of New York found that the proposed LOI was customary and usual, as required by Section 747, and that Eagle was not entitled to further relief. *Eagle Auto Mall Corp. v. Chrysler Grp., LLC*, 920 F. Supp. 2d 327, 331 (E.D.N.Y. 2013). The Second Circuit affirmed. *Eagle Auto Mall Corp. v. Chrysler Grp. LLC*, 550 F. App'x 69 (2d Cir. 2014).

After the Second Circuit found it was customary and usual, FCA sent Eagle the LOI that is the subject of this appeal. The document lays out procedures by which FCA could approve or reject Eagle's proposals for an on-brand sale and service facility before the parties would enter into a franchise agreement. To this end, the LOI gave Eagle three choices for providing a

compliant facility for exclusive sales and service of FCA brands: (1) create a new facility within eighteen months, (2) renovate an existing facility within eight months, or (3) meet the facility requirements, without renovations, within ninety days. Eagle's president, Mark Calisi, signed the LOI in January 2014 and indicated that Eagle would take the second option: renovate an existing facility.

In early February, but before it endorsed the LOI, FCA sent two representatives—Brian Freeman and George Neubauer—to Riverhead to meet with Calisi and visit the proposed site of the dealership. At the meeting, Calisi explained that the plan for the new Eagle Chrysler-Jeep sales and service facility involved two phases. First, Eagle would renovate an existing building across the street from its Mazda-Kia-Volvo dealership into a new car showroom and sales facility, which it intended to open as soon as it was complete. Second, Eagle would construct a stand-alone service facility nearby. While the service facility was being constructed, Eagle would temporarily service Chrysler-Jeep vehicles at its Mazda-Kia-Volvo dealership. Calisi said that completion of both phases would take more than two years. At the end of the meeting, Freeman evidently told Calisi that everything "looks great" and that "we are moving forward."

A few weeks later, FCA signed the LOI, making February 27, 2014, the document's effective date. The next day, Freeman sent Calisi a letter formally approving Eagle's proposed site for a Chrysler-Jeep dealership and inviting him to follow up with architectural plans.

Calisi sent a first set of architectural plans to Neubauer on March 6, 2014. Neubauer contacted Calisi to "give him guidance" because the plans "needed work." Following that feedback, Calisi went back to the drawing board and hired a new, Chrysler-approved architect. Around this time, Calisi called Freeman and expressed concerns about completing renovations

within the LOI's eight-month time frame. Calisi says Freeman told him timeline issues "come up all the time" and that "we will work with you."

On April 2, 2014, the new architect sent an email to Calisi and Neubauer, asking them to attend a meeting about the design concept. Neaubauer declined. About a month later, on May 6, the architect submitted detailed plans to FCA. On June 2, Freeman sent Calisi a letter formally denying the proposal, noting two main objections: (1) that Eagle had not provided an exclusive service department that would be operational within the LOI timeframe and (2) that Eagle's proposal used the basement, in a split-level design, to meet square footage requirements. Nonetheless, the letter said that FCA would review an amended proposal if "Eagle is able to provide a facility within the specified timeframe as described within the LOI." Calisi responded by thanking FCA for the "courtesy" of being allowed to submit an amended proposal addressing the reasons for rejection. Ten days later, Eagle submitted a third set of plans. This time, though, the plans were for construction of an entirely *new* facility, rather than a renovation.

After receiving those plans, Freeman called Calisi to discuss. During the call, Calisi acknowledged that Eagle would not be able to complete the new construction within eight months. In response, Freeman told Calisi that the LOI would be terminated. Calisi "pleaded" with Freeman, telling him that he had known "about the sales department" and "the shared service" in the original plans ever since his February 2014 visit to Riverhead. But Freeman did not relent, and notified Calisi in writing later that day that Eagle was in breach of the LOI and that FCA had filed a complaint to "seek the court's assistance in resolving our dispute with regard to our respective rights and obligations under the LOI." This appeal is a growth of that complaint.

FCA filed the complaint in Michigan state court, seeking a declaratory judgment that FCA had no further obligations under the LOI and that FCA could terminate the agreement based on Eagle's repudiation. Eagle removed to the Eastern District of Michigan and filed counterclaim for declaratory judgment, damages, and equitable relief, asserting modification, reformation, fraud, promissory estoppel, and breach of contract and breach of a seeking a duty of good faith and fair dealing.

The district court entered a discovery plan that split the case into two phases. First, the court addressed Eagle's modification and reformation claims—effectively allowing the court to clarify the LOI's operative terms. Second, the court addressed the remaining claims—focusing on who may have breached.

During the first phase, FCA moved for summary judgment on Eagle's modification and reformation claims. On August 17, 2015, the court granted the motion, holding that "the LOI was neither orally modified by the parties nor is it subject to reformation." Afterwards, Eagle filed an amended counterclaim, removing its modification, fraud, and promissory estoppel claims and asserting only that FCA breached the LOI.

FCA filed a motion to dismiss this amended counterclaim under Rule 12(b)(6) and asking for summary judgment on all remaining claims. Eagle filed an opposing motion for summary judgment. On September 12, 2016, the court dismissed Eagle's breach-of-contract counterclaim, granted FCA's motion for summary judgment, and denied Eagle's cross-motion. Eagle now appeals both the August 17 order, which held that the terms of the LOI were not modified, and the September 12 order, which granted FCA's request for declaratory relief.

## II

## A

We begin, like the district court did, by determining whether terms in the LOI were modified. In its August 17 order, the court granted summary judgment in favor of FCA on Eagle's claims that the LOI was modified or subject to reformation. We review de novo, drawing all permissible inferences in favor of Eagle. *See Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). If the evidence establishes no genuine issue as to any material fact, we are to affirm the district court's order granting summary judgment. *Id.* By the LOI's terms, we apply Michigan law. R. 78-2, LOI, PID 2196.

The LOI is a valid, binding contract that will be enforced according to its terms. *See Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 26 (Mich. 2005). And because "mutuality is the centerpiece to waiving or modifying a contract," a party may not unilaterally alter the original contract. *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 364 (2003). However, terms in a contract can be unilaterally *waived* under Michigan law if established "by clear and convincing evidence that a contracting party, relying on the terms of the prior contract, knowingly waived enforcement of those terms." *Id.* at 374. Such waiver can be inferred from declarations, acts, or conduct. *See H.J. Tucker & Assocs., Inc. v. Allied Chucker & Eng'g Co.*, 234 Mich. App. 550, 564 (1999). But merely identifying words or actions inconsistent with a contract term does not constitute waiver unless "unequivocal" and contrary to "any other intent." *Sandler v. AII Acquisition Corp., Inc.*, 954 F.2d 382, 385 (6th Cir. 1992).

Eagle's modification/reformation claims can be distilled down to an assertion that FCA changed the terms of the LOI through its course of conduct. Specifically, Eagle claims that Freeman and Neubauer were authorized to modify the LOI on behalf of FCA and that they

"waived or modified the eight-month deadline for Eagle to complete renovations, and other substantive terms of the LOI." Appellant Br. at 37. Eagle points to three categories of evidence in support of its claim that FCA waived or modified the LOI's terms: (1) Freeman and Neubauer were authorized to modify its terms, (2) FCA "regularly" modifies LOI terms with other dealers, and (3) evidence purporting to show that Freeman and Neubauer modified provisions of the Eagle LOI.

Only the third category relates to a material fact. While it may be genuinely disputed that Freeman and Neubauer had authority to modify terms of the LOI or that FCA regularly waived terms of LOIs it had with other dealers, those findings (which we accept as true for purposes of this appeal) are irrelevant if there is no genuine dispute as to whether FCA waived or modified terms of the Eagle LOI.

Eagle provides four pieces of evidence to support its claim that FCA did just that. First, Eagle brings up Freeman saying everything "looks great" and that things were "moving forward" following the February 10, 2014 meeting where Eagle's preliminary two-phase, non-compliant renovation plan was discussed. But this evidence cannot constitute waiver of the deadline term because any understandings or agreements made during that meeting precede the effective date of the LOI. By its clear terms, the LOI was the parties' "entire agreement" and "supersede[d] all prior negotiations, understandings, correspondence and agreements" and did not become effective until it was signed by FCA's national dealer placement manager on February 27, 2014. R. 1-2, LOI, PID 25. Thus, at best, the February 10, 2014 on-site discussions are evidence of a "prior" understanding that was superseded when the LOI became effective some seventeen days later.

But Eagle provides other evidence to support its modification claim. First, it points to the fact that Freeman and Neubauer knew Eagle was preparing to propose a two-phase renovation plan but provided no warning that FCA would not approve that plan until it was formally rejected. But this evidence doesn't get Eagle very far as, at best, it "establishes only that [FCA] remained silent despite being aware of [Eagle]'s conduct inconsistent with the terms of their contract. [And] [m]ere knowing silence generally cannot constitute waiver." *Quality Prods. & Concepts Co.*, 469 Mich. at 365. Still, we consider this silence, for what it's worth, in combination with the other evidence Eagle offers.

And Eagle offers two more pieces of evidence. First, that when Calisi expressed concerns about the timeline, Freeman assured him that the issue "comes up all the time" and that "we will work with you." And finally that, in its letter rejecting the proposal, Freeman wrote that FCA would reconsider its rejection if "Eagle is able to provide a facility within the specified timeframe as described within the LOI."

But this evidence, taken as a whole and reading it most favorably to Eagle, does not come close to "clear and convincing evidence" that FCA, relying on specific terms of the LOI, "knowingly waived enforcement of those terms." *See id.* at 374. The only term Eagle specifically identifies as waived or modified through this course of conduct is the eight-month renovation deadline.[1] However, there is no evidence that anyone asked for or agreed to a *new* deadline, and so, without any evidence of mutual assent to a new term, the original term remains unmodified. *See id.* at 364. Meanwhile the best Eagle can offer to show unilateral waiver was Neubauer's one-time hazy assurance that "we will work with you" on the timeline. That is not

---

[1] Facility exclusivity is a derivative of the deadline issue. Eagle determined that it would be unable to complete a new exclusive service facility within eight months, the reason it sought to service, on a temporary basis, FCA-brand vehicles in the same service facility as its non-FCA dealership.

nearly enough to unequivocally waive a contract term. *See Sandler*, 954 F.2d at 385. As the district court put it, "Eagle's attempt to turn conversations and stray statements into something more is unavailing." R. 60, August 17 Order, PID 1824.

Finally, Eagle makes no argument on appeal in support of its reformation claim. Such claims are deemed abandoned. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 872 (6th Cir. 2007). In all, Eagle has failed to establish a genuine issue whether the terms of the LOI were waived, modified, or subject to reformation. The parties' fates are tied to its original terms.

**B**

We move next to the claims of breach. In its amended counterclaim, Eagle claims that FCA breached an implied covenant of good faith and fair dealing. The district court considered this claim in response to FCA's Rule 12(b)(6) motion to dismiss. The court found that Eagle "essentially" alleged a breach of a generic duty of good faith and fair dealing which is not recognized in Michigan law. R. 99, Sept. 12 Order, PID 3387 (citing *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 476 (2003)). Further, it found that enforcing the asked-for implied covenant would impermissibly override explicit contract terms. R. 99, Sept. 12 Order, PID 3387. The court dismissed the claim. *Id.* We review de novo, asking whether the pleading contained adequate factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Michigan courts imply a duty of good faith in fulfilling discretion-based contract terms. That is, while "Michigan does not recognize a [generic, free-standing] claim for breach of an implied covenant of good faith and fair dealing," *Belle Isle Grill Corp.* 256 Mich. App. at 476, it *does* impose an implied good-faith covenant on contracting parties where "one party to the contract makes *its performance* a matter of its own discretion." *Blackward Props., LLC v. Bank*

*of Am.,* 476 F. App'x 639, 643 (6th Cir. 2012) (quoting *Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003)) (emphasis added).  However such an implied covenant cannot "override express contract terms." *Stephenson*, 328 F.3d at 826–27.  In other words, there can be no implied covenant where the parties have "unmistakably expressed their respective rights" and obligations. *Id.* at 827.  Courts have long wrangled with the distinction, asking in contexts much like this one whether an implied duty of good faith kicks in on a matter of discretion or if express terms control instead.  *See id.* at 826–27; *see also* Charles J. Faruki, *The Defense of Terminated Dealer Litigation: A Survey of Legal and Strategic Considerations*, 46 OHIO ST. L.J. 925, 975–78 (1985) (collecting cases).

On appeal, Eagle argues that the relevant pleading contained the good-faith cause of action recognized in Michigan—one based on performance tied to discretion—but, by dismissing it, the district court improperly characterized the claim as the free-standing type *not* actionable in the state.  FCA says the district court was right, the claim is of the off-limits, generic variety, and, moreover, enforcing the covenant as Eagle demands would override the LOI's express terms.

The district court was correct to dismiss Eagle's claim.  The second amended counterclaim asserts that the LOI gave FCA "unfettered discretion" to terminate Eagle's site and facility proposals and to extend deadlines, but that FCA did not exercise that discretion in good faith.  While Eagle may be right that some discretion was baked into FCA's performance under the LOI and that such discretion required good faith, FCA is right that explicit terms account for what Eagle alleges was FCA's bad-faith exercise of any discretion.  Specifically, terms of the unmodified LOI required Eagle to provide an "exclusive" facility within "eight months" and said that FCA had "no obligation to extend any time periods."  R. 78-2, LOI, PID 2193, 2195, 2196–

97. Eagle's claim is that FCA breached its duty of good faith by not extending the eight-month deadline and by not approving a non-exclusive site plan. Allowing that claim to survive would be to circumvent the explicit terms of the LOI. We agree with the district court that Eagle's second amended counterclaim alleging FCA breached a duty of good faith and fair dealing should be dismissed because no such duty applied to the explicit terms, such as the exclusivity and timing terms, in the LOI. In short, Eagle failed to adequately state a claim for which relief may be granted.

### C

After dismissing Eagle's claim that FCA breached a duty of good faith and fair dealing, the district court next considered Eagle's cross-motion for summary judgment and whether FCA breached the LOI. But this analysis was superfluous. Other than the allegation that FCA did not exercise discretion in good faith, Eagle's second amended counterclaim did not otherwise allege that FCA breached any other term in the LOI or prematurely terminated the agreement. *See* R. 76, Sec. Amd. Counterclaim, PID 2161–62. Thus, there was no claim that FCA breached for the court to consider on summary judgment. That is, once the district court properly granted FCA's motion to dismiss on Eagle's good-faith claim, any other claims that FCA breached necessarily withered on the vine.[2]

However, even considering the arguments that Eagle raises in its briefing (those asserting that the district court erred by finding there was no genuine issue of breach by FCA) we find they

---

[2] Perhaps, rather than as a standalone claim, Eagle intends its summary judgment breach arguments as a *defense* to its own breach. That is, Eagle concedes that it breached, but only because FCA breached first. Such a defense is recognized in Michigan law. *See Stoddard v. Manufacturers Nat. Bank of Grand Rapids*, 234 Mich. App. 140, 163 (1999). However, it is not apparent that Eagle intends its arguments this way. Even so, Eagle provides no evidence that FCA failed to perform any obligations or otherwise terminated the LOI, so the defense fails for the same reasons the standalone claim does.

have a fatal flaw: Eagle does not point to any evidence that FCA breached a term of the LOI. Instead, Eagle's arguments that FCA breached are premised on a defense of *its own actions*. That is, Eagle argues that it did not anticipatorily breach, but FCA did by filing its complaint asserting Eagle had. This argument is a nonstarter. Even a *mistaken* belief that another party breached does not itself constitute breach. And Eagle provides no facts showing that FCA ceased performance when it filed the complaint, that filing a lawsuit constituted breach under their agreement, or that FCA otherwise "unequivocally declare[d] the intent not to perform." *Stoddard v. Manufacturers Nat. Bank of Grand Rapids*, 234 Mich. App. 140, 163 (1999).

By its language, FCA's complaint did not terminate the LOI; it asked the court for *permission* to terminate. *See* R. 1-2, Complt., PID 15 (asking for declaratory judgment that FCA "has the right to terminate the Eagle LOI," that "[t]he Eagle LOI is terminated," and that FCA "shall have no further obligations or liability to Eagle").

In all, Eagle has provided no evidence to show FCA prematurely terminated the LOI or otherwise ceased performance. Thus, we agree with the district court: Eagle has not shown that there is a genuine issue of material fact whether FCA breached the LOI.

**D**

In any event, FCA has no further obligations or liabilities to Eagle. Because the terms of the LOI were not waived, modified, or subject to reformation, Eagle materially breached by failing to complete its renovations within the LOI's eight-month window. By its terms, the LOI would expire if the renovations were not complete by October 27, 2014, and FCA had not extended the deadline. It is undisputed that Eagle had not completed renovations by then; nor does it allege that it attempted to meet the contract's terms in the four months that remained after FCA filed its complaint but was prevented by FCA from doing so. And, as discussed above, the

deadline was not modified. Thus, as the district court found, Eagle was in material breach of the LOI as of October 27, 2014, and the district court did not err in entering summary judgment in favor of FCA on its claim that Eagle breached.

### III

For the foregoing reasons, we affirm the district court.