**Robert LILLEY, Plaintiff–Appellant, Cross–Appellee,**

v.

**BTM CORPORATION, Defendant– Appellee, Cross–Appellant.**

**Nos. 91–1063, 91–1100, 91–1398.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 4, 1991.

Decided March 12, 1992.

Rehearing Denied April 20, 1992.

Rehearing En Banc Denied April 29, 1992.

Robert M. Vercruysse, argued, Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., Ronald E. Reynolds, briefed, Butzel, Long, Gust, Klein & Van Zile, Birmingham, Mich., for plaintiff-appellant cross-appellee.

David R. Heyboer, argued, briefed, Luce, Henderson, Bankson, Heyboer & Lane, Port Huron, Mich., for defendant-appellee cross-appellant.

Before RYAN and SUHRHEINRICH, Circuit Judges, and PECK, Senior Circuit Judge.

SUHRHEINRICH, Circuit Judge.

Robert Lilley brought an action against BTM Corporation ("BTM") alleging age discrimination and retaliatory discharge in violation of the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and Michigan's Elliott–Larsen Act, Mich. Comp. Laws § 37.2101 et seq.; willfulness under state and federal law with respect to both age discrimination and retaliatory discharge; discharge in breach of an employment contract; and failure to pay commissions owed ("procuring cause"). BTM defended that Lilley was not an employee under the discrimination statutes. Prior to the first trial, the district court dismissed the breach of employment contract claim. At the conclusion of the evidence, the court granted a directed verdict in favor of BTM on the procuring cause claim. The jury found that Lilley was an employee of BTM, returned a general verdict in Lilley's favor on the age discrimination, retaliatory discharge, and willfulness claims, and awarded damages for back pay, front pay, and mental anguish totaling $800,000. The court accepted the jury's finding on employment status but ordered a new trial on the issues of age discrimination, retaliatory discharge, willfulness, and damages. The second jury returned a general verdict in favor of BTM on the age discrimination claim and in favor of Lilley on the retaliatory discharge claim and awarded damages of $186,000. The court ordered a new trial on the issue of damages for retaliation. The third jury awarded Lilley $425,000. The district court then awarded Lilley liquidated damages, attorney's fees, costs, and prejudgment interest and entered final judgment in the amount of $600,551.04. Lilley appeals the directed verdict on his procuring cause claim, the grant of a new trial after the first trial of his age discrimination claim, the second jury's verdict on age discrimination, claiming it resulted from judicial bias, the denial of prejudgment interest, and the district court's computation of attorney's fees and costs. 759 F.Supp. 1248. BTM cross-appeals the determination that Lilley was an employee, the award of liquidated damages, and the award of mental anguish damages.

We affirm in part and reverse and remand in part.

I

BTM President Edwin Sawdon offered Lilley a position selling BTM's products for a five percent commission on sales. Lilley agreed and became the only BTM employee compensated on straight commission. After receiving several large commissions, Lilley began to discuss retirement with the other members of BTM's sales staff, Steve Sawdon and Andy Janiszewski, and eventually announced to Ed Sawdon his intention to retire effective as of October 1987.

One of Lilley's projects involved a large sale to General Motors CPC–Parma. Ed Sawdon came to doubt Lilley's ability to close this deal because of his lack of engineering experience. Ultimately, Sawdon removed Lilley from this project, remarking that Lilley was "confused" and "losing it." A number of other projects that Lilley was counting on fell through, and he realized that he would not be able to retire in October 1987 as planned. Lilley informed Sawdon of this sometime in early 1987. During this time Sawdon and Lilley began to argue over commissions that Lilley claimed were owed him.

On May 4, 1987, BTM announced a new policy that, beginning in October 1987, it would no longer sell its metal joining systems through distributors or "five percenters." This policy was never implemented as to distributors, and Lilley was the company's only five percenter. The new policy had the effect of eliminating Lilley's job. The October effective date of the policy was chosen due to Lilley's previously expressed intent to retire at that time.

On July 8, 1987, Lilley filed an age discrimination complaint with the Equal Employment Opportunity Commission. On July 10, Lilley asked Sawdon to reconsider the new policy. When Sawdon refused, Lilley informed him of the discrimination complaint. Sawdon immediately terminated Lilley.

## II

### A

■ BTM argues that Lilley was not an employee. The jury disagreed.[1] BTM then moved unsuccessfully for judgment notwithstanding the verdict.

■ The term "employee" is to be given a broad construction in order to effectuate the remedial purposes of the ADEA.[2] This circuit employs the economic realities test to determine whether an employment relationship exists for the purposes of the ADEA. *See Armbruster v. Quinn*, 711 F.2d 1332, 1340 (6th Cir.1983). This test, developed under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., looks to whether the putative employee is economically dependent upon the principal or is instead in business for himself. *See Dole v. Snell*, 875 F.2d 802, 804 (10th Cir. 1989); *Mednick v. Albert Enters. Inc.*, 508 F.2d 297, 300 (5th Cir.1975); *cf. Bartels v. Birmingham*, 332 U.S. 126, 130, 67 S.Ct. 1547, 1549, 91 L.Ed. 1947 (1947). This test is a loose formulation, leaving the determination of employment status to case-by-case resolution based on the totality of the circumstances. *See Armbruster*, 711 F.2d at 1339–40.

1. The determination of employment status is a mixed question of law and fact. Normally, a judge will be able to make this determination as a matter of law. However, where there is a genuine issue of fact or conflicting inferences can be drawn from the undisputed facts, as here, the question is to be resolved by the finder of fact in accordance with the appropriate rules of law. *See Martin v. United Way*, 829 F.2d 445, 451 (3d Cir.1987).

2. 29 U.S.C. § 621 et seq. The provisions of the ADEA generally receive an identical interpretation to corresponding provisions of Title VII.

■ BTM exercised control over Lilley. Although Lilley set his own hours and vacation schedule, such flexibility is not sufficient to negate control. *See, e.g., Snell*, 875 F.2d at 806. BTM had the authority to remove Lilley from particular sales. In at least one instance, BTM exercised this authority, removing Lilley from a deal while negotiations were still taking place and replacing him with another employee. In addition, BTM required Lilley to obtain its approval before he could quote a price to a potential buyer.

Although he paid some of his own expenses, Lilley did not make an investment in the business. BTM supplied Lilley with an office, secretarial services, business cards and stationery bearing BTM's name, brochures and stickers advertising BTM's products, and telephone privileges.

In addition, Lilley was integrated into BTM's normal business operations. After BTM approved a price quotation, Lilley was authorized to sign for and bind BTM. He also attended weekly meetings of BTM's sales staff, whose members are undisputedly employees. Lilley went on "troubleshooting" trips, involving the resolution of problems that customers had with BTM's products *after* purchase. Finally, BTM invited its customers to visit its facility and offered that "our people will give you all the help you need...." Lilley was listed among BTM's "people."

■ It is also significant that Lilley sold only BTM's products. Although this is by no means determinative, it provides support for the existence of an employment relationship, particularly when viewed within the totality of the facts of this case.

*See, e.g., Coburn v. Pan Am*, 711 F.2d 339 (D.C.Cir.), *cert. denied*, 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983); *EEOC v. First Catholic Slovak Ladies Ass'n*, 694 F.2d 1068, 1070 (6th Cir.1982), *cert. denied*, 464 U.S. 819, 104 S.Ct. 80, 78 L.Ed.2d 90 (1983). Moreover, ADEA standards governing employment status also apply to Michigan's Elliott–Larsen Act, Mich. Comp.Laws § 37.2101 et seq. *Falls v. Sporting News Publishing Co.*, 834 F.2d 611, 613 (6th Cir.1987). Therefore, our analysis applies equally to Lilley's claims under federal and Michigan law.

In light of the totality of circumstances in this case, there was sufficient evidence to raise a question for the jury. The district court properly denied BTM's motion for judgment notwithstanding the verdict.

### B

■ BTM moved for a new trial on the grounds that the jury was instructed erroneously regarding Lilley's status as an employee and that prejudicial evidence was admitted on this issue. First, BTM contends that the following instruction misled the jury as to which party bore the burden of proof:

> If there is a doubt or ambiguity in the matter, you should resolve it in favor of coverage. Establishment of an independent contractor relationship requires a convincing accumulation of factors indicating that Robert Lilley's services were rendered in pursuit of his separate business enterprise of selling those services.
>
> If you find, based upon the preponderance of the evidence, that Robert Lilley was an employee of BTM, then he is within the protection of the federal law and the state law.

The instruction that "[e]stablishment of an independent contractor relationship requires a convincing accumulation of evidence" is a direct quotation of this circuit's rule. *See Falls*, 834 F.2d at 614.

BTM also challenges the instruction that doubt be resolved in favor of coverage. This portion of the instruction may have been ambiguous but the effect of the charge as a whole was not misleading. *See Howard v. Chesapeake & Ohio Ry. Co.*, 812 F.2d 282, 287 (6th Cir.), *cert. denied*, 484 U.S. 820, 108 S.Ct. 78, 98 L.Ed.2d 40 (1987). The instruction on ambiguity was followed by an instruction that the plaintiff bears the burden of proof of employment status by a preponderance of the evidence. In addition, this was succeeded by a discussion of the ADEA itself that in five instances refers to Lilley as bearing the burden of proof. Viewing the charge as a whole, the district court did not abuse its discretion.

### III

■ Lilley argues that the district court erred in directing a verdict in favor of BTM on its procuring cause claim. Michigan law provides:

> [T]he agent is entitled to recover his commission whether or not he has personally concluded and completed the sale, it being sufficient if his efforts were the procuring cause of the sale.... [I]f the authority of the agent has been cancelled by the principal, the agent would nevertheless be permitted to recover the commission if the agent was the procuring cause.

*Reed v. Kurdziel*, 352 Mich. 287, 294–95, 89 N.W.2d 479 (1958). An agent may recover a commission for customer procurement or sales procurement. Customer procurement allows an agent to recover a commission for all sales to a customer that the agent procured regardless of whether the agent was involved in the particular sale. Sales procurement allows an agent to recover a commission only on the specific sales that the agent procures. Subsequent sales to the same customer that are not procured by the agent do not yield a commission. Whether an agent is entitled to commissions on a customer procurement or sales procurement basis is determined by the contract between the agent and the principal. *See Butterfield v. Metal Flow Corp.*, 185 Mich.App. 630, 462 N.W.2d 815 (1990); *Shortt v. Centri–Spray Corp.*, 369 Mich. 303, 308, 119 N.W.2d 528 (1963).

■ The district court ruled that there was no evidence of a customer procurement contract between Lilley and BTM, or of any unpaid sales procurement commission, and granted a directed verdict to BTM. There is no dispute that Lilley was to receive commissions on the sales that he procured. The dispute is whether he would continue to receive commissions for subsequent sales to the customer in which he was not involved.

Lilley testified that he believed he would receive commissions for customers procured but presented no evidence to support this subjective belief. Michigan adheres to the objective theory of contracts. As a

result, Lilley's subjective intent or belief is irrelevant. *Banque de Depots v. National Bank of Detroit,* 491 F.2d 753, 756 (6th Cir.1974); *Heritage Broadcasting Co. v. Wilson Communications Inc.,* 170 Mich. App. 812, 818, 428 N.W.2d 784 (1988).

Lilley asserts that BTM's Answer to his Complaint contains an admission that the parties had a customer procurement contract. The substance of BTM's Answer is that Lilley was paid on a commission basis. The allegation in Lilley's Complaint to which BTM was responding dealt only with the general form of Lilley's compensation, rather than the details of his commission. Where the pleadings do address the terms of the commission, BTM's answer is clear and consistent in contending that commissions were to be based on sales procurement.

## IV

### A

The court granted BTM's motion for a new trial on the age discrimination[3] claim on two grounds: insufficient evidence and the admission of irrelevant evidence. Because we hold that the plaintiff presented insufficient evidence to establish a prima facie case of age discrimination and that j.n.o.v. should be granted, we do not consider the admission of irrelevant evidence.

 In an age discrimination case, the plaintiff bears the burden of proving a prima facie case and, at all times retains the burden of persuasion as to the ultimate issue of discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). A plaintiff may prove a prima facie case of age discrimination by establishing that:

(1) he was a member of the protected class [over age 40];

(2) he was subjected to adverse employment action;

(3) he was qualified for the position; and

(4) he was replaced by a younger person.

*Simpson v. Midland–Ross Corp.,* 823 F.2d 937, 940 (6th Cir.1987); *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

 There is no dispute that Lilley satisfies the first three of these criteria. However, Lilley was not replaced. After he was terminated in July 1987, his duties and accounts were assumed by BTM's remaining sales staff. Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement. It is not disputed that, at the time of Lilley's termination, there was a downturn in the market for BTM's products and several large orders that Lilley had worked on were canceled. In April 1988, BTM hired Steven Boehm, then age twenty-nine, to work on its sales staff. The fact that nine months later business had picked up to the extent that another employee was needed in the sales department does not mean that Boehm replaced Lilley in any sense relevant to inferring age-based discrimination. *Cf. Simpson,* 823 F.2d at 941 (three month interval "substantially weaken[s]" the inference).

 Lilley also contends there was direct evidence of age discrimination in that BTM took an adverse employment action against him on the basis of his decision to retire. In 1986, Lilley informed Ed Sawdon of his intent to retire effective in October 1987. Thereafter, Lilley notified BTM that he no longer intended to retire. BTM then announced its policy that eliminated Lilley's position as of his initial retirement

---

**3.** The relevant portion of the ADEA reads:
It shall be unlawful for an employer—
(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
29 U.S.C. § 623(a). The relevant portion of the Elliott–Larsen Act reads:

(1) An employer shall not:
(a) Fail or refuse to hire, or recruit, or discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color national origin, age, sex, height, weight, or marital status.
Mich.Comp.Laws § 37.2202(1)(a).

date. Lilley argues that this policy was directed at him and was issued in response to his decision not to retire. Lilley claims the institution of this policy constitutes an adverse employment action based upon his decision to retire and is direct evidence of age discrimination.

This argument is flawed. Although BTM's termination of Lilley through the new policy coincided *temporally* with Lilley's announced retirement, there is no evidence that they coincided *causally*—that BTM terminated Lilley because of the announcement. Lilley's reliance on *EEOC v. Community Unit School Dist. No. 9*, 642 F.Supp. 902 (S.D.Ill.1986), is misplaced as that case involved a causal relation. In *Community Unit*, two school administrators announced their intention to retire. Because of this announcement, the school board decided to effect a necessary budget cut by reassigning these administrators at lower pay. *Community Unit* would be on point if BTM had decided that it had to terminate one employee and that since Lilley had announced his retirement he would be the one chosen. Because Lilley failed to establish a prima facie case of age discrimination, the district court should have granted BTM's motion for j.n.o.v. on this claim. We, therefore, affirm the judgment that ultimately was entered in favor of BTM on the issue of age discrimination.

### B

■ Lilley challenges the district court's grant of a new trial on the issue of willfulness after the first trial. Since the first jury returned a general verdict, it is impossible to determine whether its finding pertained solely to the retaliatory discharge claim, solely to the discrimination claim, or to both. Because Lilley failed to present sufficient evidence of age discrimination, a finding of willfulness solely as to this claim would, a fortiori, be unsupported. Given the indefiniteness of the first jury's verdict on willfulness, the court properly ordered a second trial on the issue of willfulness.

### V

■ Lilley claims that the district judge was biased against him and denied him a fair second trial. First, Lilley cites a comment by the judge, made out of the hearing of the jury, that Lilley should have been more enthusiastic about settling the case and another comment, again made out of the hearing of the jury, that Lilley's theory of pretext was attenuated.

Lilley relies on *Anderson v. Sheppard*, 856 F.2d 741 (6th Cir.1988), which held that judges must avoid the appearance of bias as well as actual bias. *Anderson* involved a trial judge who told the plaintiff that he should have accepted the settlement offer and that he had a weak case. The judge had conducted the settlement conference and, in his own words, had "egg on [his] face" because his previous dismissal of the case was reversed. *Id.* at 742–44. We held that the district judge abandoned his role as impartial arbiter and "assumed the posture of an advocate." *Id.* at 747.

This case is distinguishable from *Anderson*. The district judge did not mediate the settlement discussions. There was no other factor that might create an appearance that the judge had abandoned his role or that his comments were offered other than as an impartial observer. *See Patrick v. City of Detroit*, 906 F.2d 1108 (6th Cir.1990).

Lilley also claims that several erroneous rulings show judicial bias. Assuming arguendo that the rulings were erroneous, there is no indication that they resulted from bias or gave the appearance that the district judge was biased. Finally, Lilley complains that the jury laughed during his testimony. However, Lilley offers no connection between the laughter and judicial bias.

The charge of judicial bias is a serious one indeed. The ability of the judiciary to fulfill its constitutional function rests upon the maintenance of impartiality. We will not ascribe bias to a district judge in the absence of evidence that he has abandoned his role as an impartial arbiter. Lilley has failed to make such a showing.

## VI

■ A plaintiff may recover liquidated damages "only in cases of willful violations." 29 U.S.C. § 626(b). BTM requested that the trial court give a separate jury instruction regarding willfulness. The district court refused, ruling that retaliation[4] automatically includes willfulness. Under the facts of this particular case, we agree with the district court that a separate instruction was not necessary.

## VII

### A

■ The recovery of mental anguish damages is permitted under the Elliott–Larsen Act. *Slayton v. Michigan Host,* 122 Mich.App. 411, 417, 332 N.W.2d 498 (1983). Lilley submitted such a claim and ultimately was awarded $350,000. Lilley testified to his feelings of anguish and embarrassment following his discharge, and his wife corroborated this testimony. He also underwent treatment with a psychiatrist, Dr. Marble. Lilley testified that he was unable to secure employment, that the discharge had an adverse effect on his marriage, and that he lost weight and had difficulty sleeping. This constitutes greater evidence than was present in *Moody v. Pepsi–Cola Metro. Bottling Co.,* 915 F.2d 201 (6th Cir.1990) (upholding mental anguish damages), and BTM's claim that there was insufficient evidence of mental anguish is unavailing.[5]

### B

■ BTM next argues that the amount of the verdict is excessive. This determination lies within the sound discretion of the district court. *Moody,* 915 F.2d at 211. In the first trial, the jury awarded Lilley $250,000 in mental anguish damages. At the second trial, the verdict form submitted to the jury failed to provide for the assessment of mental anguish damages and none were awarded. The jury in the third trial awarded $350,000 in compensation for mental anguish. The district court entered this verdict. We find it noteworthy that two separate juries heard nearly identical evidence on this issue and returned similar verdicts.

■ Our determination is to be guided by awards upheld in similar cases. *Id.* The verdict in this case is "within the realm of other verdicts" that have been upheld in similar cases. *See id.* (affirming a verdict of $150,000 for mental anguish suffered as a result of discrimination) (citing *Wilson v. General Motors Corp.,* 183 Mich.App. 21, 31, 454 N.W.2d 405, 415 (1990) (affirming $375,000 award); *Jenkins v. American Red Cross,* 141 Mich.App. 785, 798–99, 369 N.W.2d 223, 230 (1985) (affirming $500,000 award)). Based on the foregoing considerations, the award in this case was not excessive.

BTM also contends that the verdict was the result of passion and prejudice. BTM cites the opening statement of Lilley's

---

**4.** The relevant portion of the ADEA reads:

It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter. 29 U.S.C. § 623(d). Michigan law provides:

An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action. Mich.Comp.Laws § 15.362.

**5.** BTM challenges the failure to grant judgment notwithstanding the verdict on mental anguish damages at each trial. As BTM admits, the evidence was substantially identical at each. Therefore, the district court's ruling was correct in each instance.

counsel at the third trial, in which he referred to BTM as having been found "guilty" of retaliation. The district court, however, gave a limiting instruction and cut short the plaintiff's opening statement. These curative actions effectively eliminated any prejudice.

## VIII

■ The jury returned a general verdict of liability on Lilley's claim of retaliatory discharge. Retaliation is prohibited under both the federal ADEA and Michigan's Elliott–Larsen Act and Lilley brought claims under both statutes. However, the jury's general verdict did not specify the statute under which it found BTM liable. The ADEA bars plaintiffs from recovering prejudgment interest while the Elliott–Larsen Act permits recovery of prejudgment interest from the date the complaint is filed. Mich.Comp.Laws § 600.6013 (providing prejudgment interest on all damage recoveries in civil actions); *Brunson v. E & L Transport Co.*, 177 Mich.App. 95, 107, 441 N.W.2d 48 (1989) (applying prejudgment interest from date of complaint to date of recovery under Elliott–Larsen Act). The district court denied Lilley's request for prejudgment interest.

BTM argues that the district court's ruling on prejudgment interest was correct, citing *Wojtkowski v. Cade*, 725 F.2d 127 (1st Cir.1984) (plaintiff's request for prejudgment interest denied because the court was unable to determine whether the basis for the jury's award was state or federal law).

In contrast to *Wojtkowski*, the state and federal claims here are both for retaliatory discharge and involve substantially identical elements. *Compare Wentz v. Maryland Casualty Co.*, 869 F.2d 1153, 1154–55 (8th Cir.1989) (elements of the ADEA), *with Kocenda v. Detroit Edison Co.*, 139 Mich.App. 721, 726, 363 N.W.2d 20 (1984) (elements of Elliott–Larsen). Since it is not possible for a jury to find a retaliatory discharge under the ADEA without also finding retaliation under the Elliott–Larsen Act, the district court erred in denying prejudgment interest. *See Bailey v. Con-*

*tainer Corp. of America*, 660 F.Supp. 1048 (S.D.Ohio 1986) (awarding prejudgment interest after general verdict finding age discrimination).

■ Finally, BTM contends that Lilley cannot receive both liquidated damages and prejudgment interest. The Supreme Court has held that under the Fair Labor Standards Act a plaintiff cannot recover both liquidated damages and prejudgment interest. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). This circuit has applied that ruling to the ADEA; thus, a plaintiff cannot recover both liquidated damages and prejudgment interest under the ADEA. *Rose v. National Cash Register Corp.*, 703 F.2d 225, 230 (6th Cir.1983). However, the prejudgment interest here is awarded under Michigan's Elliott–Larsen Act while liquidated damages fall under the ADEA.

These awards are not duplicative. Under the ADEA, liquidated damages are punitive. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125, 105 S.Ct. 613, 623, 83 L.Ed.2d 523 (1985). Michigan holds prejudgment interest to be compensatory. *Osinski v. Yowell*, 135 Mich.App. 279, 354 N.W.2d 318 (1984); *Foremost Life Ins. Co. v. Waters*, 125 Mich.App. 799, 337 N.W.2d 29 (1983). Thus, Lilley may recover both.

## IX

■ The Supreme Court has ruled that "the district court has discretion in determining the amount of a fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). There is no precise formula for determining the amount of a fee award, but the district court is to be guided by the degree of success achieved through litigation. *Id.* at 436–37, 103 S.Ct. at 1941. The district court determined that Lilley achieved limited success at trial. We agree. While Lilley only succeeded in proving retaliatory discharge, this is sufficient to render him a "prevailing party" eligible to recover reasonable attorney's fees, *see id.* at 433, 103 S.Ct. at 1939.

Lilley claims that the district court erred in failing to award the full fees it requested. Lilley submitted exhibits claiming recovery from $60 to $210 per hour over a total of 3,500 hours. The district court ruled that it was only reasonable for one attorney to have worked on this case for 525 hours at a rate of $125 per hour. Although the district court did not follow the generalized framework that the Supreme Court set forth in *Hensley,* we cannot say its result was reached in error.

Lilley also requested $47,103.48 in litigation expenses. Lilley itemized this request but failed to correlate the individual expenses to specific claims. The district court refused to consider the expenses "item-by-item," rejected all expenses on unsuccessful claims, including age discrimination, and arbitrarily allowed $7,500 in expenses. This determination is clearly erroneous. The district court reduced the award partly on the basis of expenses incurred in pursuing the age discrimination claim. This claim was related to the retaliatory discharge claim and expenses incurred in pursuing it are recoverable under *Hensley.* The district court itself did not reduce the attorney's fee award for time spent on the age discrimination claim, and it would have been erroneous to have done so. Moreover, the district court failed to justify its award in terms of Lilley's overall success. Thus, the district court erred in fixing the litigation expense award.

### X

We affirm the judgment of the district court as to employment status; procuring cause; age discrimination and retaliation, under both 29 U.S.C. § 621 *et seq.* and Mich.Comp.Laws 37.2101 *et seq.;* willfulness and liquidated damages; attorney's fees; and mental anguish. We reverse the judgment of the district court as to prejudgment interest and costs and remand for recomputation, by the court, of costs and assessment of prejudgment interest.