GRIFFIN, Circuit Judge,
dissenting.
I respectfully dissent. While I agree with the majority that the district court erred in failing to rule on the merits of plaintiff Bowers’s motion for disqualification of counsel prior to ruling on defendant The Ophthalmology Group’s dispositive motion, any error in this regard was harmless in light of Bowers’s failure to establish a conflict of interest — specifically, that McMurry & Livingston PLLC’s (“M & L’s”) prior and current representations are “substantially related” as required by the applicable rules of professional conduct. Because the district court did not otherwise err in determining that defendant was entitled to summary judgment as a matter of law with regard to Bowers’s Title VII claims, I would affirm.
“Motions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary.” Valley-Vulcan Mold Co. v. Ampco-Pittsburgh Corp., 237 B.R. 322, 337 (6th Cir. BAP 1999), aff'd 5 Fed.Appx. 396 (6th Cir.2001) (citation and internal quotation marks omitted). A party seeking disqualification carries a heavy burden and must meet a high standard of proof. Id. (citation omitted). Under the analogous requirements of Ky. S.Ct. R. 3.130 (1.9(a)), ABA Model Rules of Professional Conduct 1.9(a) (2011), and this circuit’s tripartite test in Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio, 900 F.2d 882, 889 (6th Cir.1990), a former client moving for disqualification must demonstrate, inter alia, that “the matters embraced within the pending suit are substantially related to the matters or causes of' action wherein the attorney previously represented [the former client].” Gen. Elec. Co. v. Valeron Corp., 608 F.2d 265, 267 (6th Cir.1979) (citation omitted). “Matters are ‘substantially related’ ... if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client’s position in the sub *656 sequent matter.” ABA Model Rules of Professional Conduct 1.9 cmt. 3; see also Ky. S.Ct. R. 3.130 (1.9 cmt. 3) (same). “The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.” ABA Model Rules of Professional Conduct 1.9 cmt. 2.
As the basis for her motion for disqualification, Bowers points to two prior instances in which M & L represented her: (1) defendant’s potential expulsion of a male partner in 2005, and (2) her attempt to establish a practice in Louisville, Kentucky in 2008. The existence of an actual past attorney-client relationship stemming from these consultations is not in dispute in this case. However, contrary to Bowers’s assertions, disqualification is not required because these matters bear no “substantial relationship” to the present Title VII action.
In 2005, defendant’s partners became concerned about rumors of inappropriate relations between one of their physicians and non-parties to this case. Defendant’s partners engaged in joint discussions, where all partners (including Bowers) were present, with M & L’s attorneys regarding the prospect of expelling the physician. In the course of these consultations, M & L prepared a draft indemnification agreement that inured to the benefit of defendant; however, the agreement was never signed or executed because the offending physician rectified his conduct to the satisfaction of defendant’s partners.
This 2005 matter obviously does not involve “the same transaction or legal dispute” as the present case, which entails issues of alleged gender discrimination and retaliation, and Bowers’s subsequent bankruptcy, insolvency, and purported diversion of business to a competitor. Moreover, since the 2005 legal consultations transpired in the context of group partnership meetings with M & L’s attorneys, no communications were made by Bowers to counsel that were unknown to the other physicians and hence there was not “a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance [defendant’s] position in the subsequent matter.” ABA Model Rules of Professional Conduct 1.9 cmt. 3.
Nor is the present case “substantially related” to M & L’s 2008 representation of Bowers on an individual basis in her aborted attempt to establish a practice in Louisville. Bowers sought to perform refractive surgery on a once-a-week basis in Louisville while overseeing her restaurant there, a franchise of the Mongolian Grill. In 2008, defendant’s practice manager referred Bowers to an attorney with M & L, for the purpose of creating a corporate entity known as Refractive Surgery of Louisville, PLLC. Bowers’s activities in Louisville would have no competitive effect on defendant’s medical practice in Paducah, over 200 miles away, and her proposal was made with the knowledge and consent of defendant’s partners. However, Bowers’s plans never materialized because she ultimately decided, for various reasons, including the failure of her restaurant business, not to perform medical procedures in Louisville. Bowers’s PLLC was never used, and it was administratively dissolved in 2009.
The events underlying the present litigation started in late 2009 and early 2010. On November 9, 2009, Bowers tendered a resignation letter to defendant’s partners. Although her partnership agreement required a one-year notice, she did not state when she intended to depart. Bowers allegedly began secret discussions with a direct competitor, Eyecare Associates, *657 which had an office across the street from defendant in Paducah.
On February 25, 2010, Bowers filed a Chapter 7 bankruptcy petition to resolve her restaurant debt. That same month, she unilaterally added the office location of Eyecare Associates to malpractice insurance coverage paid for by defendant. Shortly thereafter, defendant’s partners learned that Bowers intended to work with Eyecare Associates. On March 4, 2010, after consulting with an M & L attorney, they unanimously voted to expel Bowers from the partnership, citing “your Chapter 7 bankruptcy and ... other personal conduct on your part which the Partnership, in its opinion, finds detrimental to the Partners and the Partnership.... ” In March 2012, Bowers filed the instant action against defendant, alleging gender discrimination and retaliation under Title VII, and violations of state law. A state-court action is also pending. Defendant is represented by M & L in these cases.
Unlike the majority, I simply cannot conclude that M & L’s limited 2008 transactional work for Bowers for the narrow purpose of forming a now-defunct company, with the full knowledge and consent of defendant, is substantially related to the present matter, so as to justify the disqualification of M & L in this case. The majority’s opinion is rife with speculative scenarios regarding confidential information that Bowers may have shared with M & L regarding her relationship with her partners in The Ophthalmology Group. But Bowers’s conclusory assertions that issues in the former and current representations are related and that confidences were imparted to M & L in the 2008 consultations that would unfairly advance defendant’s cause herein do not suffice to fulfill the heavy burden on Bowers to justify disqualification. M & L’s assistance in setting up a corporation, and the personal financial information imparted by Bowers that predominated this task, have little or no relationship to her current claims of discrimination and retaliation in violation of federal and state law. Bowers’s failure to establish this essential element dooms her argument that a conflict of interest exists.
Reaching the merits of defendant’s dis-positive motion to dismiss, I would affirm the district court’s grant of summary judgment in favor of defendant for the reasons stated in its well-reasoned decision below. As the district court properly determined, Bowers was a partner of The Ophthalmology Group, not an “employee” afforded protection under Title VII.
“The determination of whether a plaintiff qualifies as an employee under the Act ‘is a mixed question of law and fact’ that a judge normally can make as a matter of law.” Weary v. Cochran, 377 F.3d 522, 524 (6th Cir.2004) (quoting Lilley v. BTM Corp., 958 F.2d 746, 750 n. 1 (6th Cir.1992)). In making this determination, this court looks to the common-law agency test, in which “appellate consideration reviews numerous factors impacting the employment relationship to be judged in arriving at a decision with no one decisive factor.” Simpson v. Ernst & Young, 100 F.3d 436, 443 (6th Cir.1996); see also Shah v. Deaconess Hosp., 355 F.3d 496, 499 (6th Cir.2004). The district court correctly held that the relevant indicia of being an “employee” are not present in this case; instead, the evidence of record clearly demonstrates that Bowers enjoyed partnership status through a partnership agreement, engaged in decision-making with her partners, and was compensated according to a partnership formula. Defendant was therefore entitled to judgment as a matter of law with regard to Bowers’s Title VII gender discrimination and retaliation claims, and the district court did not abuse *658 its discretion in declining to exercise supplemental jurisdiction over Bowers’s remaining state-law claims.
For the foregoing reasons, I would affirm the district court’s judgment.